**In re James F. WALKER, Debtor.**

**No. 03–32158–BKC–PGH.**

United States Bankruptcy Court,
S.D. Florida,
West Palm Beach Division.

Sept. 8, 2006.

Robert A. Angueira, Kevin C. Gleason, Hollywood, FL, Mary Alice Gwynn, Delray Beach, FL, Bruce I. Kravitz, Theresa M. Lemme, Carl Shuhi, Alicia Trinley, West Palm Beach, FL, Arthur C. Neiwirth, Scott J. Reit, Ft. Lauderdale, FL, Lisa M. Pisciotta, Aviva L. Wernick, Miami, FL, for creditors.

Gary J. Rotella, Ft. Lauderdale, FL, for debtor.

John L. Walsh, Ft. Lauderdale, FL, trustee.

***ORDER GRANTING SUSAN LUND-
BORG'S MOTION TO STRIKE THE
MOTION FOR RELIEF FROM AU-
GUST 29, 2005 ORDER APPROV-
ING RESOLUTION OF TRUSTEE'S
OBJECTION TO CLAIM NO. 5 OF
SUSAN LUNDBORG (C.P. 1145)
PURSUANT TO RULE 60(b), FED.
R.CIV. P.***

PAUL G. HYMAN, Bankruptcy Judge.

**THIS MATTER** came before the Court for hearing on August 8, 2006. On June

16, 2006, Gary J. Rotella, P.A., as Assignee of Ferrell Law's Summary of Final Application for Compensation of Fees & Costs of Former Chapter 7 Trustee's Counsel ("Rotella As Assignee") and Debtor, James F. Walker, as Assignee of the Debtor's Estate's interest in the Cat Cay Property ("Debtor As Assignee") (collectively the "Rule 60(b) Movants") filed a *Motion for Relief From August 29, 2005 Order Approving Resolution of Trustee's Objection to Claim No. 5 of Susan Lundborg (C.P. 1145) Pursuant to Rule 60(b), Fed.R.Civ. P.* [C.P. 1587] (the "Rule 60(b) Motion"). On July 18, 2006, Susan Lundborg ("Lundborg") filed a *Motion to Strike the Motion for Relief From August 29, 2005 Order Approving Resolution of Trustee's Objection to Claim No. 5 of Susan Lundborg (C.P. 1145) Pursuant to Rule 60(b), Fed. R.Civ. P.* [C.P. 1653] (the "Motion To Strike"). On August 4, 2006, the Rule 60(b) Movants filed a *Response to [Lundborg's Motion to Strike]* [C.P. 1702] (the "Response").

## BACKGROUND

■ James F. Walker (the "Debtor") filed for relief under Chapter 7 of the Bankruptcy Code on April 25, 2003. The Court takes judicial notice of the pleadings and proceedings in this case. Although this bankruptcy filing was a seemingly straight forward individual Chapter 7 case with a handful of creditors, it has dragged on for nearly two and one-half years. There are presently over 1700 entries on the docket. Since the inception of this case, twenty-four notices of appeal have been transmitted to the District Court and more are in process to be transmitted. As is shown by the Rule 60(b) Motion, this case has not only been over-litigated, it has been marked by continued attempts by the non-prevailing party to relitigate issues previously determined by final orders of this Court.

On June 20, 2006, the Court entered a *Memorandum Order* [C.P. 1589] ("Memorandum Order") which ruled upon a series of sanctions motions and cross-motions between Lundborg, and Gary J. Rotella, P.A. ("Rotella") and the Debtor.[1] Although the Memorandum Order provides significantly more background information, the Court herewith provides a sketch of the events leading up to the present posture of this matter.

1. Debtor's Schedules filed May 27, 2003 show an insolvent estate with $101.00 in assets and $1,095,257.28 in liabilities (the "Estate"). None of the scheduled liabilities was indicated by the Debtor to have been contingent, unliquidated, or disputed.

2. Debtor's Schedules listed real property known as Lot 32, North Cat Cay, Bahamas (the "Cat Cay Property") as exempt, however the Court sustained Linda Walden, the former Trustee's ("Former Trustee Walden") objection to this classification and found that the Cat Cay Property was not exempt. The Court determined that under Bahamian law there exists no exemption for real property held by husband and wife as joint tenants.

---

1. The Rule 60(b) Movants stress that the Rule 60(b) Motion is brought in their respective capacities as "assignees". To avoid confusion, the Court will refer to "Rotella" to denote his capacity as counsel for Debtor and to "Rotella as Assignee" to denote his capacity as assignee of the Law Firm of Ferrell Law, P.A.'s Summary of Final Application for Compensation of Fees & Costs of Former Chapter 7 Trustee's Counsel. The Court will similarly refer to the "Debtor" or where appropriate to "Debtor As Assignee" to denote his capacity as assignee of the Debtor's Estate's interest in the Cat Cay Property.

3. On October 6, 2003, Former Trustee Walden filed a complaint objecting to Debtor's discharge pursuant to 11 U.S.C. § 727. This lawsuit was assigned adversary proceeding number 03–3302–BKC–PGH–A. This adversary proceeding was dismissed two years later on September 1, 2005 pursuant to a settlement between the Trustee and the Debtor.

4. In 1996 Eleanor C. Cole ("Cole"), a judgment creditor of the Debtor, sought and received relief in the courts of the Bahamas for a judicial sale of the Cat Cay Property to satisfy her judgment. A September 3, 2002 Bahamian Court Order (the "Bahamian Sale Order") authorized the sale of the Cat Cay Property to Lundborg. The sale, although authorized, was not completed prepetition.

5. On April 12, 2005 and April 19, 2005 respectively, the Court granted Debtor's motions to strike the claims of Cole and Florida Precision Calipers, Inc. ("FPC"), as a sanction for discovery abuses. Cole and FPC were two of the largest creditors in this case.

6. On November 14 2004 after a five day hearing, the Court found cause to remove Former Trustee Walden from the position of Chapter 7 Trustee.[2] Deborah Menotte was appointed as Trustee on November 18, 2004. Patricia Dzikowski ("Trustee") was appointed successor Trustee on December 6, 2004.

7. On May 12, 2005, Lundborg timely filed Proof of Claim No. 5 ("Lundborg's Proof of Claim"), wherein she asserted claims against the Estate for expenses incurred with respect to the Cat Cay Property.

8. On May 27, 2005 Debtor filed an *Emergency Motion To Strike Susan Lundborg's Proof Of Claim; Motion for Compensatory And Punitive Sanctions Against Lundborg, Wernick, Lubell, and Hughes, LLP Pursuant To 28 U.S.C. § 1927 and 11 U.S.C. § 105 For Filing Fraudulent Proof Of Claim; and Motion To Immediately Refer Lundborg, Wernick, and Lubell To United State's [sic] Attorneys Office For Criminal Prosecution For Filing Fraudulent Proof Of Claim Pursuant to 18 U.S.C. §§ 152 and 3571* [C.P. 926] ("Debtor's Motion to Strike Claim"). Debtor's Motion to Strike Claim sought sanctions against Lundborg and her counsel, Aviva Wernick ("Wernick") and Daniel Lubell ("Lubell") for Lundborg's having filed an allegedly fraudulent proof of claim. The criminal referral portion of Debtor's Motion to Strike Claim was denied by a *sua sponte* order of the Court. The remainder of Debtor's Motion to Strike Claim was denied in the Memorandum Order.

9. On June 2, 2005, Debtor filed an *Objection to Proof of Claim No. 5* [C.P. 935] ("Debtor's Objection to Claim"). Debtor's Objection to Claim is a one-page filing that incorporates Debtor's Motion to Strike Claim in its entirety without adding anything.

10. June 9, 2005, Patricia Dzikowski, Trustee, filed an *Objection to Claim No. 5* [C.P. 945] ("Trustee's Objection to Claim"). Trustee's Objection to Claim stated that the Trustee had entered into a settle-

---

**2.** The Court's orders removing the Chapter 7 Trustee were affirmed on appeal to the District Court. The District Court's order is currently on appeal to the Eleventh Circuit.

ment agreement with the Debtor, whereby the Estate's "right title and interest, subject to any and all claims, liens, and encumbrances, in the Cat Cay Property located in the Bahamas is being conveyed to the Debtor." Trustee's Objection to Claim maintained that to the extent Lundborg had any claim(s) secured by the Cat Cay Property, that claim would serve as an encumbrance against the real property, that claim would follow the real property, and that claim would be enforceable against it in the Bahamas.

11. On June 15, 2005, Trustee filed a *Motion By Trustee Patricia Dzikowski to Approve Settlement and Sale of the Bankruptcy Estate's Right Title and Interest in the Bahamian Real Property at Cat Cay, Lot 32* [C.P. 953] ("Trustee's Motion to Approve Sale") seeking the Court's approval of, among other things, sale of the Estate's interest in the Cat Cay Property to Rotella and the Debtor. Trustee's Motion to Approve Sale attached as Exhibit "A" a Settlement Agreement between Trustee and Debtor dated March 9, 2005 (the "Settlement Agreement").

12. On July 1, 2005, the Law Firm of Ferrell Law, P.A. ("Ferrell") filed a final application seeking compensation and expenses in the amount of $629,239.86 for Ferrell's representation of Former Trustee Walden.

13. On July 14, 2005, Rotella and the Debtor filed adversary proceeding number 05–3127–Bkc–PGH–A against the Trustee seeking attorneys' fees and costs in the amount of $637,559.68 allegedly incurred for services rendered to, and on behalf of, the Estate. The adver-

sary proceeding was settled after resolving the objection of the United States Trustee. On August 18, 2005 the Court entered an *Order Awarding Attorneys' Fees and Costs* [Adv. Proc. 05–3127, C.P. 7] to Rotella in the amount of $220,492.35. Rotella was permitted to credit bid this award at any sale of the Estate's assets.

14. On August 2, 2005, Trustee filed a *Motion to Approve Resolution of Trustee's Objection to Claim No. 5 of Susan Lundborg* [C.P. 1085] ("Trustee's Motion to Approve Lundborg Settlement") which ultimately eliminated the need for an evidentiary hearing on Lundborg's Proof of Claim. Trustee's Motion to Approve Lundborg Settlement included as Exhibit "A" a *Stipulation for Resolution of Trustee's Objection to Claim No. 5 and Motion to Dismiss Adversary Proceeding* ("Stipulation"). On August 5, 2005, the Debtor filed an *Objection to Stipulation for Resolution of Trustee's Objection to Claim No. 5 and Motion to Dismiss Adversary Proceeding* [C.P. 1104] ("Debtor's Objection to Lundborg Settlement"). On August 29, 2005 the Court entered an *Order Approving Resolution of Trustee's Objection to Claim No. 5 of Susan Lundborg* [C.P. 1145] (the "Order Approving Lundborg Settlement"). This is the order that the Rule 60(b) Movants seek to have set aside.

15. During July 2005, the Debtor and Lundborg filed sanctions motions against each other for alleged violations of the automatic stay in connection with prosecution of litigation in the Bahamas. The Court determined that the Debtor had

not violated the automatic stay, but found that Lundborg did willfully violate the automatic stay by authorizing her Bahamian counsel to file two separate notices appealing the Bahamian Court orders of December 7, 2004 and February 28, 2005, without first having obtained relief from stay. The Memorandum Order ultimately determined that any claim for damages to the Estate resulting from Lundborg's violation of the automatic stay, including any administrative attorneys' fees, were released by the Trustee pursuant to the Order Approving Lundborg Settlement.

16. On August 18, 2005 the Court entered an *Order Awarding Attorneys' Fees and Costs* [C.P. 1124] to Ferrell in the amount of $536,552.36 (the "Ferrell Administrative Claim"). On August 23, 2005, the Court entered an *Order of Substitution of Claim* [C.P. 1125] which substituted Rotella, transferee for Ferrell, as the claimant for this award of fees. Rotella was permitted to credit bid this award at any sale of the Estate's assets.

17. On September 1, 2005, the Court entered *an Order Granting Motion to Approve Settlement and Sale as Modified* [C.P. 1153] (the "Order Approving Sale") which approved sale of the Estate's interest in the Cat Cay Property "to the extent same exists" to Debtor and Rotella *Id.* ¶ 1. The Order Approving Sale noted that Rotella was the owner by assignment of the Ferrell Administrative Claim for attorneys' fees and costs for their representation of the former Chapter 7 Trustee. As part of the Settlement Agreement, Debtor and Rotella released, waived and/or subordinated any and all claims against the Estate and Trustee. As part of the Settlement Agreement, the Trustee dismissed adversary proceeding number 03–3302–BKC–PGH–A in which the Trustee had objected to Debtor's discharge.[3] Debtor paid Trustee's fees and Trustee's attorney's fees and costs totaling $56,000 in cash and applied Rotella's credit bid of $757,044.71 for a total offer of $813,044.71 for the Estate's interest in the Cat Cay Property. This bid was accepted as the highest and best offer for the Estate's interest in the Cat Cay Property.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under title 11 pursuant to 28 U.S.C. § 157(b)(2)(A).

### A. Federal Rule of Civil Procedure 60(b)

The Rule 60(b) Motion seeks relief from the Court's August 29, 2005 Order Approving Lundborg Settlement alleging that said order was obtained by "fraud upon this Court". Lundborg's Motion to Strike argues that the Rule 60(b) Motion fails to state a claim for Rule 60(b) relief, that the Rule 60(b) Movants lack standing, and that the Rule 60(b) Motion is untimely. The Court need not reach all of Lundborg's arguments because, as discussed below, the Rule 60(b) Motion fails to demonstrate that grounds exist for Rule 60(b) relief.

Fed.R.Civ.P. 60(b) states in pertinent part:

---

3. The Debtor received his discharge on September 21, 2005.

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ...

> (3) **fraud** (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ...

The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. **This rule does not limit the power of a court ... to set aside a judgment for fraud upon the court....**

Fed.R.Civ.P. 60(b) (emphasis added).

■ The Rule 60(b) Motion uses some variation of the phrase "fraud upon this Court" seventeen times, mostly in bold underlined typeface. At the same time the Rule 60(b) Movants quote Fed.R.Civ.P. 60(b)(3). Rule 60(b) Motion ¶ 8. The Court notes that Rule 60(b) provides grounds for relief from judgment based upon two different types of fraud. " '[F]raud upon the court' under the saving clause is distinguishable from 'fraud...misrepresentation or other misconduct' under subsection (3)." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir.1978).[4] This distinction is also evident in the different standards employed to establish fraud upon the court as distinguished from Rule 60(b)(3) fraud between adverse parties. The Court is compelled to address both types of fraud due to the lack of clarity in the Rule 60(b) Motion.

■ The distinction between fraud upon the court and fraud between parties was expressed by the Eleventh Circuit in *Travelers Indemnity Co. v. Gore*, 761 F.2d 1549 (11th Cir.1985):

> "Fraud upon the court" should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct. Fraud *inter parties*, without more, should not be fraud upon the court, but redress should be left to a motion under Rule 60(b)(3) or to an independent action.

*Id.* at 1551.

■ The plaintiff in *Travelers*, who was attempting to circumvent the Rule 60(b)(3) one-year limitation period, alleged that the defendant obtained "final judgment in the original action through a preconceived scheme to use the judicial system to defraud the plaintiff" and that the alleged scheme was a fraud upon the court. *Id.* The Eleventh Circuit did not agree. It found that the alleged fraud primarily involved the concerns of the two parties and that the allegations did not rise to the level of fraud upon the court. *Id.* "Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute fraud upon the court... Less egregious misconduct such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court." *Rozier*, 573 F.2d at 1338 (cita-

---

**4.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

tions omitted). The *Travelers* "premeditated scheme" allegations revolving around the defendant's perjury are similar to the allegations contained in the Rule 60(b) Motion. Like the Eleventh Circuit in *Travelers*, the Court in this case finds that the allegations contained in the Rule 60(b) Motion do not rise to the level of fraud upon the Court.· The alleged fraud in this case did not prevent the Movants from gaining access to an impartial system of justice. *See Securities Exch. Comm'n v. ESM Group, Inc.*, 835 F.2d 270, 274 (11th Cir. 1988).

▆▆▆ Under the alternative grounds of Rule 60(b)(3), a court may grant relief from final judgment "if the moving party proves by clear and convincing evidence that an adverse party obtained the verdict through fraud, misrepresentation, or other conduct... The moving party must also show that the conduct prevented the losing party from fully and fairly presenting his case or defense." *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1287 (11th Cir.2000).

▆▆▆ For the reasons stated below, the Court finds for Lundborg. Even if all of the allegations in the Rule 60(b) Motion are true, the Rule 60(b) Movants were not prevented from presenting their case by any fraud, misrepresentation or other misconduct of Lundborg. At the August 8, 2006 hearing on Lundborg's Motion to Strike, the Court asked Mr. Gleason ("Gleason"), counsel for the Rule 60(b) Movants, to make a proffer of the facts he intended to establish if the Court were to conduct an evidentiary hearing on the Rule 60(b) Motion. Upon questioning by the Court, Gleason conceded that **no new facts or evidence had been adduced since** **the Court held hearings one year ago** on Trustee's Motion to Approve Lundborg Settlement. Indeed, the allegations contained in the Rule 60(b) Motion are nearly verbatim recitations of the allegations contained in Debtor's Motion to Strike Claim and in Debtor's Objection to Claim (collectively, "Debtor's Objections to Claims"), both of which were filed well advance of the August 10, 2005 hearing on Trustee's Motion to Approve Lundborg Settlement (the "August 10, 2005 Hearing"). Thus, the substance of the allegations are not new. The Rule 60(b) Movants failure to raise the allegations contained in the Rule 60(b) Motion in their respective capacities as "assignees" at the August 10, 2005 Hearing by a timely filed motion for rehearing or by a timely filed appeal does not provide grounds pursuant to Rule 60(b)(3) to set aside a final order of the Court entered one year ago.

### 1. *Rotella As Assignee*

The Trustee's Motion to Approve Lundborg Settlement was properly served, and the hearing thereon was properly noticed to all creditors, including Ferrell. Ferrell, having appeared at many of the hearings conducted by the Court, was an active participant in this case during the summer of 2005. Mr. Murphee ("Murphee"), an attorney employed by Ferrell, attended the August 10, 2005 Hearing at which Trustee's Motion to Approve Lundborg Settlement was heard. Ferrell could have objected to the Trustee's Motion to Approve Lundborg Settlement, but chose not to. Ferrell was not prevented from raising an objection by the fraud, misrepresentation or other misconduct of any adverse party.[5]

---

**5.** While Ferrell did not object to the Trustee's Motion to Approve Lundborg Settlement, it is interesting to note that on July 6, 2005 Ferrell filed a Response in Opposition to Trustee's Motion to Approve Settlement and Sale [C.P. 992] ("Ferrell's Objection to Sale"), in which Ferrell strongly objected to the proposed sale of the Estate's interest in the Cat Cay Proper-

■ At the August 10, 2005 Hearing, Rotella disclosed that he had acquired the Ferrell Administrative Claim.[6] Thus, Rotella as Assignee could have raised the allegations contained in the Rule 60(b) Motion at the August 10, 2005 Hearing, but Rotella as Assignee did not. Rotella as Assignee could have timely filed a motion for rehearing, but Rotella as Assignee did not. Rotella as Assignee could have timely filed an appeal, but Rotella as Assignee did not. Rule 60(b)(3) does not permit a movant to relitigate matters that have been determined by final orders of the Court absent evidence that fraud, misrepresentation or other misconduct of an opposing party prevented the movant from presenting his case. There are no allegations that Lundborg's alleged "fraud", misrepresentation or other misconduct prevented Rotella as Assignee from presenting his case. The Court finds that Rotella as Assignee's request for Rule 60(b)(3) relief is without merit.

### 2. *Debtor As Assignee*

■ The Trustee's Motion to Approve Lundborg Settlement and the Order Approving Lundborg Settlement provided for mutual releases between the Trustee, the Estate, and Lundborg. The Order Approving Lundborg Settlement states in part:

> The Trustee, and the Estate, and Ms. Lundborg, mutually release each other and their attorneys, representatives, designees and assigns from any claims, demands, obligations liabilities and causes of action of any kind or character that they may have against each other in or arising from this case, including any claims for possible violations of the auto-

matic stay, from the beginning of the world to the date of this Order.

Order Approving Lundborg Settlement ¶ 7.

Thus, any claims that the Estate might have asserted against Lundborg were released prior to the Debtor acquiring the Estate's interest in the Cat Cay Property. Any of the Debtor as Assignee's alleged claims against Lundborg are derivative of the Trustee and consequently any alleged claims of the Debtor as Assignee have also been released. There are no allegations that misconduct by Lundborg prevented the Debtor as Assignee from fully presenting his case as required for Rule 60(b)(3) relief. Therefore Debtor As Assignee's request for Rule 60(b)(3) relief from the Court's final August 29, 2005 Order Approving Lundborg Settlement is denied.

### B. *Alternative Relief Requested*

■ The Rule 60(b) Motion seeks in the alternative, the setting aside, in part, of paragraph 4 of the Order Approving Lundborg Settlement. The section of the Order Approving Lundborg Settlement that the Rule 60(b) Movants wish to have vacated states:

> Entry of this Order, the withdrawal of Ms. Lundborg's Proof of Claim number 5, releases of claims provided herein shall be without prejudice to Ms. Lundborg or her attorneys, representatives, or assigns proceeding in the Bahamas to pursue or enforce any rights, claims or interests which they may have associated with any property or transactions involving or related to [the Cat Cay Property] to the extent allowed by applicable law, including any claims she may have against the Debtor or his wife to

---

ty to Rotella and the Debtor. Ferrell's Objection to Sale was however withdrawn after Rotella acquired the Ferrell Administrative Claim.

**6.** The Order Of Substitution of Claim was entered August 23, 2005.

the extent allowed by applicable law, By entry of this Order, all injunctions or stays that may exist in this case with respect or related to the [Cat Cay Property] or the pursuit or enforcement in the Bahamas of such rights, claims or interest shall be dissolved and shall be of no force or effect; . . . .

The above quoted section of paragraph 4 dissolves the stay and allows Lundborg to pursue her interests relating to the Cat Cay Property in the Bahamas. The Debtor's Objection to Lundborg Settlement attached a redlined version of the Stipulation which included, among other changes, the deletion of the above provision releasing Lundborg from the automatic stay. In addition, Debtor's Objection to Lundborg Settlement stated that additional grounds would be raised at the hearing *ore tenus*. Although the Rule 60(b) Motion contains essentially the same allegations found in Debtor's Objections to Claim, Rotella never raised these allegations in connection with Debtor's Objection to Lundborg Settlement despite his assertion that he would raise additional grounds *ore tenus* at the August 10, 2005 Hearing. The record reveals that the Debtor and anyone else who wished, had ample opportunity to raise any objection to the Stipulation. From the August 10, 2005 Hearing transcript ("Aug. 10, 2005 Transcript") [C.P. 1205]:

> THE COURT: Okay, let's go line by line. Tell me what the objections are, who is raising the objections.

Aug. 10, 2005 Transcript at p. 6.

The Court then painstakingly went through the Stipulation line by line. After fielding objections as to whether or not the middle initial of Former Trustee Walden should be included and objections as to the form of the Stipulation as a single document titled "Stipulation and Order" rather than a separate stipulation and a separate order, the Court addressed Rotella's substantive objections. Rotella's primary concern at the August 10, 2005 Hearing was Lundborg being granted immediate relief from stay to perfect title to the Cat Cay Property. At this point it is important to note that the hearing on the Trustee's Motion to Approve Sale was scheduled to be conducted two weeks later on August 25, 2005. Rotella indicated he did not want Lundborg to be granted relief from stay until such time as the Order Approving Sale became final. A resolution was arrived at whereby the stay was dissolved upon entry of the Order Approving Lundborg Settlement, however Lundborg was prohibited from taking title to the Cat Cay Property during the earlier of thirty days from entry of the Order Approving Lundborg Settlement or ten days after entry of an Order Approving Sale, unless the Court ordered otherwise for cause. *See* Order Approving Lundborg Settlement ¶ 4. Thus, Rotella's concern was resolved in a manner that was satisfactory to him at the time. The Court continued to work through the Stipulation giving the parties adequate opportunity to raise objections. *See* Aug. 10, 2005 Transcript at p. 1–44. The Court notes the following exchange at the conclusion of this part of the hearing:

> MR. ROTELLA: Will the Court approve the agreement?
>
> THE COURT: Any other objections? Hearing none, yes.
>
> MR. ROTELLA: Is it approved?
>
> THE COURT: Yes. Mr Walsh will prepare the order.

Aug. 10, 2005 Transcript at p. 43–44.

█ Trustee's Motion to Approve Lundborg Settlement received a full airing at the August 10, 2005 Hearing. If Debtor was unhappy with the Order Approving Lundborg Settlement, he could have filed an appeal. He did not. A Rule 60(b) motion is not a substitute for a proper and

timely appeal. *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir.1993). The Rule 60(b) Movants have demonstrated no grounds to warrant the alternative relief requested, in which as "assignees", they essentially seek a second bite at the apple.

### C. *Rotella's Tactical Decisions*

The Court finds that Rotella as Assignee's failure to timely raise the allegations contained in the Rule 60(b) Motion was the result of Rotella's tactical decisions rather than the result of any fraud, misrepresentation or other misconduct by Lundborg that prevented the Rule 60(b) Movants from presenting their case. *Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300,1310 (11th Cir.2003) (affirming district court's denial of Rule 60(b)(3) relief and noting, "[i]t was Plaintiffs' tactical decisions, not fraud by Defendants, that prevented Plaintiffs from fully presenting their case.").

It is instructive to review the proceedings relative to the resolution of the contested matters as settled by the Trustee during the summer 2005. The Court's determination that the Cat Cay Property was not exempt was affirmed on appeal to the District Court on January 12, 2005. The Debtor appealed this decision to the Eleventh Circuit. Trustee's Motion to Approve Sale reveals that the Eleventh Circuit selected this appeal for submission to court ordered mediation. Thereafter the Trustee, the Estate and the Debtor reached a global settlement of all matters between them as memorialized by Rotella in the

March 9, 2005 Settlement Agreement which was attached to Trustee's Motion to Approve Sale. Although the Settlement Agreement had been reached on March 9, 2005, Trustee's Motion to Approve Sale was not filed until June 15, 2005. Pursuant to the Settlement Agreement the Trustee agreed to sell for $20,000 "whatever, if *any* right, title and interest [of the Estate] in [the Cat Cay Property]" (emphasis in original).[7]

On March 31, 2005, Rotella filed an *Emergency Motion For Default Judgment Against Cole as Sanctions for Refusal to Obey Subpoena, Appear and Testify at Deposition and Amended Motion to Strike Claim*, as well as an *Emergency Motion For Default Judgment Against FPC as Sanctions for Refusal to Obey Subpoena, Appear and Testify at Deposition and Amended Motion to Strike Claim*. These motions were granted and the claims of these creditors were ultimately stricken by the Court in April, 2005 [C.P. 805 & 832].[8]

On May 27, 2005, Rotella filed Debtor's Motion to Strike Claim seeking criminal referral of Lundborg and her attorneys for having filed an allegedly fraudulent claim and the striking of that claim. On June 2, 2005 Rotella filed Debtor's Objection to Claim which incorporated by reference Debtor's Motion to Strike Claim. On June 9, 2005, Trustee filed Trustee's Objection to Claim. On June 15, 2005, Trustee filed Motion to Approve Sale. The hearing on all of these matters was set for July 8, 2005 ("July 8, 2005 Hearing").

---

7. Ultimately the Debtor and Rotella paid $56,000 in cash and applied Rotella's credit bid of $757,044.71 making a total offer of $813,044.71 for the Estate's interest in the Cat Cay Property. *See Order Approving Sale.*

8. Over the ensuing weeks a veritable blizzard of sanctions motions and cross-motions, motions for protective orders, and motions to

set aside previous court orders were filed by Rotella and Mary Alice Gwynn ("Gwynn"), former counsel for Cole and FPC. These pleadings were heard by the Court at various hearings held in May, June, and July, 2005. Some of the orders emanating from those hearings are still under appeal.

On July 1, 2005, Ferrell filed a final application for compensation seeking $629,239.86 in fees and costs from the Estate. On July 6, 2005, the Assistant United States Trustee, Heidi Feinman, ("Feinman") filed an Objection to Trustee's Motion to Approve Sale (the "UST Objection"). On July 6, 2005, Ferrell filed Ferrell's Objection to Sale.

At the July 8, 2005 Hearing, the Court sustained Feinman's Objection that there had been insufficient information provided by the Trustee upon which to determine whether the substance of the Trustee's settlement with the Debtor should be approved. The matter was continued until such time as the information was provided. The Court nevertheless permitted Ferrell to present the testimony of his Bahamian witnesses regarding the value of the Cat Cay Property so that it would not be necessary for them to return at a later date. This testimony was presented in support of Ferrell's Objection to Sale.

The Court then turned to Debtor's Objections to Claim. After some disagreement as to procedure, it was determined that only the legal objections to Lundborg's Proof of Claim would be heard. After hearing the argument of counsel, the Court overruled all legal objections to Lundborg's Proof of Claim. The Court then attempted to schedule an evidentiary hearing on the factual issues raised in Debtor's Objections to Claim. When the Court suggested alternative dates, Rotella said "I would like the sooner date Judge." Lubell then asked why was it necessary for his client to spend still more money on attorneys' fees, if there was to be a settlement and sale of the Estate's interest in the Cat Cay Property for $20,000. Lubell indicated that if the Estate's interest in the Cat Cay Property was to be sold to the Debtor and Rotella for $20,000, there was no practical reason to object to the proof of claim since there would be no funds available to pay claims. The exchange regarding setting an evidentiary hearing on the Debtor's Objections to Claim continued:

THE COURT: That thought has crossed my mind numerous times since I saw the settlement, what are we wasting time on some of this stuff for?

MS. WERNICK: Would you like to set it down for after that hearing, the [Trustee's Motion to Approve Sale] hearing? It would make sense.

THE COURT: Why not?

MR. ROTELLA: Well, because they are going to come in and vehemently oppose the settlement.

THE COURT: I don't think it matters at all.

MR. GLEASON: But they are offering more money.

July 8, 2005 Transcript at p. 174–175 [C.P. 1097].

After a lengthy discussion about Lundborg's higher all cash offer and Debtor's cash plus other components offer, the hearing on Debtor's Objection to Claim was continued to July 28, 2005.

The next day the Court *sua sponte* set a telephone conference hearing for the purpose of scheduling (the "July 13, 2005 Hearing") at which Rotella, counsel for Trustee ("Walsh"), Lubell, a representative of Ferrell, Feinman, and Gwynn made appearances. The Court explained that at the conclusion of the July 8, 2005 Hearing, scheduling matters were discussed and the Court believed that the scheduling matters needed to be reconsidered.

THE COURT: ... let me tell you my thought process. First of all, what most people, I believe don't understand about settlement and hearing on motions to approve settlement, when there's objection ... they are eviden-

tiary hearings, ...—in order for me to resolve a disputed matter there must be testimony concerning the merits of a particular claim, the merits of any defense, and the trustee's estimation of the results of such lawsuit or claim. ...There [are] four distinct claims [or] issues that are potentially subject to settlement.

July 13, 2005 Transcript at p. 3–4 [C.P. 1253].

The Court then identified the following five issues each of which was potentially subject to settlement: 1) the objection to Debtor's discharge; 2) Rotella's administrative claim in prosecuting the motion to remove trustee; 3) the Ferrell Administrative Claim; 4) Lundborg's Proof of Claim; and 5) the stay violation motions. The Court noted that if the matters were disputed, evidentiary hearings would have to be conducted. In particular the Court noted:

> THE COURT: If you're going to try to settle with Mr. Walker for, I think the number was $20,000 you've got to, based on the testimony I heard so far that the property is worth a million bucks, there's got to be substantial testimony concerning why there's this deep discount.

July 13, 2005 Transcript at p. 5–6.

> MR. WALSH: Judge, from the trustee's perspective, we undertook the analysis you laid out for each of the claims. Now, as you pointed out, we didn't learn of [the Ferrell Administrative Claim] being filed, didn't actually receive it, until last Friday either. So we're a little behind the gun on that one also...... It does probably make sense to put this matter off a little bit. As I argued at the hearing, from my perspective, I do think the Lundborg [Proof of Claim] needs to get resolved as to the value of the claim. I mean,

obviously, reducing a claim to waiving 800 something thousand dollars in claims is a significant consideration.

July 13, 2005 Transcript at p. 12–13.

After extensive discussion regarding the proper sequence of hearings on each of the above mentioned issues, the Court determined that all administrative claims were to be filed by July 20, 2005, and that all objections thereto were to be filed by July 27, 2005. Any objections to administrative claims would be heard on August 4, 2005. Rotella's claim for administrative expense which he wished to file as an adversary proceeding was set for trial for August 4, 2005. The administrative claims however were not heard until August 10, 2005. Debtor's Objections to Claim were also set for August 10, 2005. Trustee's Motion to Approve Sale was set for August 19, 2005, but it was ultimately heard on August 25, 2005.

On August 2, 2005, Trustee filed Trustee's Motion to Approve Lundborg Settlement which was set for hearing for August 10, 2005, the same date that was set for hearing the administrative claims. As discussed above, at the August 10, 2005 Hearing Rotella's main concern with respect to Trustee's Motion to Approve Lundborg Settlement was when the automatic stay would be lifted to allow Lundborg to pursue her interests in the Bahamas. That issue was resolved to Rotella's satisfaction. After approval of the Trustee's Motion to Approve Lundborg Settlement, the stay violations sanctions motion and cross-motion were taken up. At the end of the August 10, 2005 Hearing the administrative claims were heard. Rotella announced that he had acquired the Ferrell Administrative Claim.

> MR. ROTELLA: Judge, the following oppositions were filed... the U.S. Trustee's opposition to the final fee application of [Ferrell], counsel to for-

mer Chapter 7 Trustee, and Mr. Lubell's office filed objection of Susan Lundborg to final fee application and complaint for allowance of attorney's fees and costs of [Ferrell] and [Rotella]. The trustee filed, or the Office of U.S. Trustee filed U.S. Trustee's objection to complaint filed by debtor and debtor's counsel, and Mr. Walsh filed on behalf of the Chapter 7 trustee his answer.

All of the parties, counsel for the respective parties have conferred, and have agreed as follows. There are no longer any creditors in this case as of the Court's approval to the Stipulation by and between the Chapter 7 Trustee and Susan Lundborg. Therefore, I have agreed to subordinate my claims to the claims of the Chapter 7 trustee and her counsel, and in consideration for the same Ms. Feinman, on behalf of the Office of U.S. Trustee, has agreed to withdraw her objections.

Aug. 10, 2005 Transcript at p. 184–185.

Counsel for Trustee then raised several points which were addressed. When Lubell attempted to raise an objection, it was determined that he had no standing since Lundborg's claim was withdrawn at the beginning of the hearing pursuant to the Court's approval of the Stipulation.

At the July 8, 2005 Hearing Rotella had voiced his concern that Lundborg was going to vehemently object to the Trustee's Motion to Approve Sale. Gleason had voiced his concern that Lundborg was going to offer more money for the Estate's

interest in the Cat Cay Property. Thus at the August 10, 2005 Hearing, by not objecting zealously to Trustee's Motion to Approve Lundborg Settlement and by not pursuing the allegations in the Debtor's Objections to Claim (essentially the same allegations in the pending Rule 60(b) Motion), Rotella achieved his goals. His strategy won him a delayed effective date for relief from stay for Lundborg, withdrawal of Lundborg's claim, and Lundborg's consequent lack of standing to object to: 1) the Ferrell Administrative Claim; 2) acquisition of the Ferrell Administrative Claim by Rotella; 3) Rotella's administrative claim; and 4) Trustee's Motion to Approve Sale which included the right of Rotella to credit bid $757,044.71 in administrative claims at any sale of the Estate's interest in the Cat Cay Property. In addition by acquiring the Ferrell Administrative Claim, Rotella had silenced Ferrell's opposition to the Trustee's Motion to Approve Sale. By bidding $56,000 in cash plus the entire $757,044.71 of the two administrative claims, Rotella effectively froze out Lundborg's competing offer to buy the Estate's interest in the Cat Cay Property for $150,000 in cash. Rotella and the Debtor's bid of $813,044.71 was accepted as the highest and best offer for the Estate's interest in the Cat Cay Property.[9]

The Trustee's Motion to Approve Lundborg Settlement was approved by the Court on August 10, 2005 and memorialized in the Court's August 29, 2005 Order Approving Lundborg Settlement. It is astonishing to this Court that nearly one year later Rotella seeks to set aside that

9. On September 6, 2006 the Court entered an *Order Denying James F. Walker, and Gary J. Rotella & Associates, P.A.'s Motion for Relief from Order Pursuant to Rule 60(b)(1) and (6), Fed.R.Civ. P.*, in which the Court denied Rotella's request for relief from the Court's September 1, 2005, Order Approving Sale. Rotella sought to have the Debtor and Rotella's bid of $813,044.71 reduced to $56,000. The Court denied the relief requested. Having bid the entire amount of the Ferrell Administrative Claim for the Estate's interest in the Cat Cay Property, the statement in the Response that the Ferrell Administrative Claim "remains fully unpaid" is incorrect. Response ¶ 2.

order by raising in the Rule 60(b) Motion, the same allegations contained in Debtor's Objections to Claim which he chose not to pursue at the August 10, 2005 Hearing because it did not serve his interests as he perceived them at that time. Rotella and the Debtor purchased the Estate's "right, title and interest in [the] Cat Cay [Property] to the extent same exists." Order Approving Sale at ¶ 1 (emphasis added). The Estate's interest in the Cat Cay Property was subject to "Lundborg or her attorneys, representatives, or assigns proceeding in the Bahamas to pursue or enforce any rights, claims or interests which they may have associated with any property or transactions involving or related to [the Cat Cay Property] to the extent allowed by applicable law". Order Approving Lundborg Settlement at ¶ 4. At the August 25, 2005 Hearing on Trustee's Motion to Approve Sale, counsel for Trustee stated:

> MR. WALSH: The other aspect of what we're selling is again, subject to liens or claims or encumbrances. Ms. Lundborg does have an order by which she was, again, its Bahamian law and I don't want to use the wrong term, but in effect she was entitled to purchase both the interest of the debtor and the nonfiling spouse in the Bahamas. That order has subsequently been reversed and is currently on appeal by Ms. Lundborg again in the Bahamas.
> Again, we're selling this interest subject to whatever the outcome of that Bahamian appeal may be.

August 25, 2005 Transcript at p. 26 [C.P. 1184]

The Rule 60(b) Movants knew that their acquisition of the Estate's interest, if any, in the Cat Cay Property was subject to litigation in the Bahamas. If the Rule 60(b) Movants weren't willing to accept the risk that Lundborg might prevail in the Bahamas, they shouldn't have acquired the Cat Cay Property. The Response states:

> There was no bottom line prejudice, as a result of these [alleged] activities by Lundborg to Movants herein, until such time as the Bahamian Court of Appeals entered its Order of October 12, overturning Justice Lyon's December 7, 2004 Order, and its Order of November 15, 2005, overturning Justice Lyons' February 28, 2005 Order.[10]

Response ¶ 50.

 That the litigation in the Bahamas has taken a turn unfavorable to the Rule 60(b) Movants since entry of the Order Approving Sale, is not grounds for Rule 60(b) relief from the Court's final order entered one year ago. Once the Estate sold its interest, *if any*, in the Cat Cay Property, the anticipated litigation over that property was no longer relevant to the proceedings before this Court. The final determinations of this Court are not subject to modification based upon whether or not, at a given point in time, the Rule 60(b) Movants are prevailing in the Cat Cay Property litigation.

### *CONCLUSION*

The Rule 60(b) Motion's allegations do not rise to the level of fraud upon the Court. Furthermore, the Rule 60(b) Movants were not prevented from fully presenting their case by the alleged fraud, misconduct or misrepresentation of Lundborg. The failure of the Rule 60(b) Movants to timely raise the allegations in the Rule 60(b) Motion was a conscious tactical

---

**10.** The Response reveals that Debtor is currently appealing the latest orders of the Bahamian courts "to the Privy Counsel, the highest Court of Appeal in London, England". Response ¶ 49.

decision by Rotella. Thus, Rule 60(b)(3) relief is denied.

### ORDER

The Court, having considered the Motion to Strike, the Rule 60(b) Motion, the Response, the applicable law, the argument of counsel, having taken judicial notice of the pleadings and proceedings in this case, and being otherwise fully advised in the premises hereby:

**ORDERS AND ADJUDGES** that Lundborg's Motion to Strike is **GRANTED**.